FEMALE ACADEMY OF THE SACRED HEART et al., Respondents, v DOANE STUART SCHOOL, Appellant. [937 NYS2d 682]—

Mercure, A.P.J.

While a lease embodying those terms was never executed,[1] defendant nevertheless rented the property. By 2000, defendant owed over $500,000 in back rent, forcing Sacred Heart to advance funds to the Female Academy for maintenance of the property. In an effort to resolve the situation, the parties executed a loan forgiveness agreement and a lease running through 2012, with Sacred Heart agreeing to forgive a portion of the debt for every month that defendant timely paid rent. Both the lease and the loan forgiveness agreement could be terminated by plaintiffs in the event of defendant's breach.

After defendant vacated the premises and ceased paying rent in 2009, Sacred Heart canceled the loan forgiveness agreement and demanded that defendant repay the full debt. Plaintiffs thereafter commenced this action to recover both the outstanding debt and the rent owed by defendant through the remaining term of the lease. Defendant answered and asserted several affirmative defenses, including claims that the cancellation provision in the MOU barred plaintiffs' action and that the 2000-2012 lease was void pursuant to Religious Corporations Law § 12 (1). Plaintiffs thereafter moved for partial summary judgment, while defendant cross-moved for summary judgment dismissing the complaint. Supreme Court granted plaintiffs' motion in part, dismissed the two affirmative defenses, and denied defendant's cross motion in its entirety. Defendant appeals and we affirm.

Initially, we agree with Supreme Court that the MOU's lease provisions are unenforceable, because they lack "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (*Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999]; *see Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 91 [1991]). While several subparagraphs in the MOU address aspects of a future lease of the Female Academy's property, it was explicitly deemed a "preliminary agreement" that contemplated further negotiations and execution of "a formal contract" (*see Follender v Prior*, 63 AD3d 1458, 1459 [2009]). Indeed, the MOU failed to specify several material terms of the future lease, including the amount of rent to be paid, when the

---

1. From 1975 to 2000, the parties executed only one lease agreement, for a term of one year from 1984-1985.

lease was to take effect and what portion of the property would be leased (*see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d at 591; *Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105, 109-110 [1981]; *Uniland Partnership of Del. L.P. v Blue Cross of W. N.Y. Inc.*, 27 AD3d 1131, 1132-1133 [2006], *lv denied* 7 NY3d 713 [2006]).[2] The MOU therefore constituted an unenforceable agreement to agree on terms in a future lease, and does not bar plaintiffs' claims (*see Uniland Partnership of Del. L.P. v Blue Cross of W. N.Y. Inc.*, 27 AD3d at 1132-1133; *St. Regis Paper Co. v Rayward*, 16 AD2d 130, 133 [1962], *affd* 12 NY2d 1033 [1963]; *cf. Sunshine Steak, Salad & Seafood v W. I. M. Realty*, 135 AD2d 891, 893 [1987]).

We further agree with Supreme Court that defendant lacked standing to argue that the 2000-2012 lease is invalid pursuant to Religious Corporations Law § 12 (1), which prohibits a religious corporation from leasing its real property "for a term exceeding five years" absent judicial approval. Religious Corporations Law § 12 was intended to protect the members of such corporations "from loss through unwise bargains and from perversion of the use of the property" (*Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn*, 76 AD2d 712, 716 [1980], *affd* 54 NY2d 742 [1981]; *accord Diocese of Buffalo v McCarthy*, 91 AD2d 213, 217 [1983], *lv denied* 59 NY2d 605 [1983]). Inasmuch as the statute was thus intended to give the *religious corporation* relief from "unwise bargains," the lease was voidable at the Female Academy's option and defendant lacked standing to challenge it (*see Congregation Atzei Chaim v 26 Adar N.B. Corp.*, 27 AD3d 412, 412-413 [2006]; *Matter of Bridge to Spiritual Freedom*, 304 AD2d 574, 575 [2003]; *see also Lawas v Cole*, 116 AD2d 936, 936-937 [1986]; *Martin v Bankers Trust Co. of Albany, N.A.*, 51 AD2d 411, 412-413 [1976]).

Contrary to defendant's contention, the failure to obtain judicial approval of the lease, by itself, did not render the lease void ab initio. The Female Academy was incorporated solely as a "seminary of learning" and, assuming without deciding that it

---

2. Contrary to defendant's contention, the amount of rent owed cannot be objectively determined using the MOU's definition of "the cost of operating the part of the facility used for school purposes." The MOU fails to specify what part of the property would be leased and, furthermore, neither the MOU nor extrinsic evidence specifies an objective method for determining or apportioning the costs (*see Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d at 110-111; *cf. Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 483-485 [1989], *cert denied* 498 US 816 [1990]; *Village of Lansing v Triphammer Dev. Co.*, 193 AD2d 919, 920-921 [1993]).

is a "religious corporation," it does not meet the definition of an incorporated church (*see* Religious Corporations Law § 2; *Matter of Prall*, 78 App Div 301, 303-304 [1903]; *cf. Matter of Lueken*, 97 Misc 2d 201, 203-204 [1978]). Thus, episcopal consent was not required to enter into the lease, and the Female Academy continues to hold "the power either to avoid or to validate" it (*Diocese of Buffalo v McCarthy*, 91 AD2d at 218; *cf.* Religious Corporations Law § 12 [3]; *Soho Ctr. for Arts & Educ. v Church of St. Anthony of Padua*, 146 AD2d 407, 410-412 [1989]).

Peters, Rose, Lahtinen and Garry, JJ., concur. Ordered that the order is affirmed, with costs.