OPINION OF THE COURT
Chief Judge Wachtler.
In this case, we consider whether a lease renewal option that provides for arbitration if the parties cannot agree on rent for the renewal period is indefinite and therefore unenforceable. We agree with the Appellate Division that the option is not an invalid "agreement to agree” because the arbitration clause provides an objective standard for determining the amount of rent. Accordingly, the order of the Appellate Division should be affirmed.
The appellant in this proceeding is the landlord, 151 East Post Road Corp., and the respondent is the tenant, 166 Mamaroneck Avenue Corp. Both are successors in interest to parties that signed a 42-year commercial lease in 1946 for a parcel in White Plains. The term ran from January 1, 1947 to January 1, 1989. The lease gave the tenant, its successors, or assigns the "right, option and privilege” to renew the lease for another 21-year term on the same conditions and terms as those contained in the original lease except for the amount of rent. According to the agreement, if the parties were unable to agree to the rent, "the same shall be fixed by arbitration as provided for by the Civil Practice Act of the State of New York.”
The tenant notified the landlord of its intention to exercise the option and renew the lease. The parties entered into negotiations but were unable to agree on a new rent for the renewal period. In November of 1986, the landlord filed a demand for arbitration with the American Arbitration Association seeking determination of the market rental value of the parcel for the 21-year renewal period. The demand was later withdrawn. In September of 1988, the landlord notified the tenant that it deemed the tenant’s rights and interests in the parcel as terminating on January 1, 1989, the original expiration date set forth in the lease.
By service of notice of petition and petition verified October 19, 1988, the tenant commenced a proceeding in Supreme Court, Westchester County, for appointment of an arbitrator pursuant to CPLR 7504. The landlord cross-moved for dismissal of the proceeding for failure to state a cause of action "in that the renewal provision contained in the lease [was] an *91 agreement to agree and [was] therefore void and unenforceable”. Supreme Court granted the landlord’s cross motion to dismiss the petition. The court found that the renewal term was indefinite and therefore unenforceable, relying upon this Court’s holding in Martin Delicatessen v Schumacher (52 NY2d 105) and upon the decision of the Appellate Division in Cobble Hill Nursing Home v Henry & Warren Corp. (144 AD2d 518). The Appellate Division reversed and granted the tenant’s petition, also relying upon Cobble Hill, which had in the interim been reversed by this Court (74 NY2d 475). We now affirm.
The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to (see, 1 Corbin, Contracts § 95, at 394). As we noted recently in Cobble Hill, "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract” (74 NY2d, at 482, citing Martin Delicatessen v Schumacher, 52 NY2d, at 109; Restatement [Second] of Contracts § 33 [1981]). Further, "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable” (Martin Delicatessen v Schumacher, supra, at 109).
This Court, however, has not applied the definiteness doctrine rigidly. Contracting parties are often imprecise in their use of language, which is, after all, fluid and often susceptible to different and equally plausible interpretations. Imperfect expression does not necessarily indicate that the parties to an agreement did not intend to form a binding contract. A strict application of the definiteness doctrine could actually defeat the underlying expectations of the contracting parties (Cobble Hill Nursing Home v Henry & Warren Corp., supra, at 483). Thus, where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain (see, 1 Williston, Contracts § 46, at 152-153 [3d ed]). Striking down a contract as indefinite and in essence meaningless "is at best a last resort” (Cohen & Son v Lurie Woolen Co., 232 NY 112, 114).
In Martin Delicatessen (supra), we identified two ways in which the requirement of definiteness could be satisfied in the absence of an explicit contract term: (1) an agreement could *92 contain "a methodology for determining the [missing term] * * * within the four corners of the lease, for a [term] so arrived at would have been the end product of agreement between the parties themselves”; or (2) an agreement could "inviteQ recourse to an objective extrinsic event, condition or standard on which the amount was made to depend.” (Id., at 110.)
We looked to these principles for guidance when we revisited the definiteness doctrine in the Cobble Hill case. There, the tenant had an option to purchase a nursing home owned by the defendant "at a price determined by the Department [of Health] in accordance with the Public Health Law and all applicable rules and regulations of the Department” (id., at 480). The defendant refused to sell the facility to the tenant, contending that the price term contained in the option was void for indefiniteness (id., at 481). We held the option enforceable, concluding that the parties’ intent that a third person fix the sales price for the nursing home "itself provided] an objective standard without the need for further expressions by the parties” (id., at 483). We noted that it was apparent from the agreement that the parties rested discretion in the Department of Health to calculate the sales price, "limited only by the requirement that it apply provisions that were suitable, pertinent and appropriate for the task at hand.” (Id., at 484.)
In the case now before us, we examine a contract in which the parties have expressly provided that a third party, an arbitrator, is to determine the price term in the event they are unable to reach an agreement on their own. As in Cobble Hill, the contract does not spell out the precise manner in which the amount of rent is to be calculated. The landlord argues that this renders the clause unenforceable. We disagree. The original parties to the lease themselves selected a process for the calculation of rent for the renewal term. They clearly intended to be bound by the arbitrator’s determination. Arbitration, while a process and not a methodology per se, implicates the participation and decision making of a neutral third party. We conclude that by providing for this eventuality and agreeing to be bound by the result, the parties "invited recourse to an objective extrinsic event, condition or standard on which the amount was made to depend” (Martin Delicatessen v Schumacher, supra, at 110), and that the renewal term is consequently definite and enforceable.
That the third party in this case is an arbitrator and not a *93 governmental subdivision is of no consequence. Just as the Department of Health was circumscribed by applicable law and regulations in Cobble Hill, so too would the authority and discretion of an arbitrator be mapped out by State statutory and common law. Article 75 of the CPLR, which as successor to the Civil Practice Act (see, CPLR 101) applies to the lease term at issue in this case, establishes definite, ascertainable standards for the manner in which an arbitration is conducted. CPLR 7504 permits the court, on application, to appoint an arbitrator if a method for appointment is not specified in the agreement. This case was commenced by such an application. CPLR 7506 addresses the actual hearing and sets requirements for notice, the presentation of evidence, representation by an attorney, and determination by majority. Article 75 sets out the manner in which awards can be confirmed, vacated or modified by the court (see, CPLR 7510, 7511).
Further, a rich body of common law supplements CPLR article 75. Arbitration is a favored method of dispute resolution in New York, as this Court has repeatedly held (Matter of Weinrott [Carp], 32 NY2d 190, 199; see also, Sablosky v Gordon Co., 73 NY2d 133, 138; Mobil Oil Indonesia v Asamera Oil [Indonesia], 43 NY2d 276, 281; Matter of Prime [Jonas], 38 NY2d 570, 574), and New York courts interfere "as little as possible with the freedom of consenting parties” to submit disputes to arbitration (Matter of Siegel v Lewis, 40 NY2d 687, 689; Gilbert v Burnstine, 255 NY 348, 353; see generally, Siegel, NY Prac § 586, at 931 [2d ed]). Additionally, the cases grant arbitrators broad authority to resolve disputes, unfettered by formal rules of law or the constraints of the traditional litigation model (see, Matter of Silverman [Benmor Coats], 61 NY2d 299, 308-309; Lentine v Fundaro, 29 NY2d 382; Fudickar v Guardian Mut. Life Ins. Co., 62 NY 392, 399-400). When the original parties to this lease consented to arbitration of a rent dispute, they necessarily entrusted the dispute to the considerable discretion of the arbitrator. Article 75 and the relevant case law together chart the outer limits of this discretion.
Thus, while this case is not identical to Cobble Hill, we believe that our reasoning in that case applies with equal force here. We do not doubt that the original parties to the lease fully intended to be bound by their agreement. The decision of these parties to submit any dispute as to the amount of rent payable during the renewal period to an *94 arbitrator — a third party with considerable discretion, but whose discretion is delineated by law — provides an objective standard that renders the renewal clause definite and enforceable.
We have considered appellant’s remaining arguments and we find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.